M. D. HULL

*v.*

THE SANGAMON RIVER DRAINAGE DISTRICT.

*Opinion filed February 21, 1906.*

1. DRAINAGE—*grantor of a deed placed in escrow is properly counted as an owner in signing a petition.* A grantor in a deed placed in escrow may properly sign a petition to organize a drainage district under the Levee act, where the deed was not to be delivered until several months after the hearing upon the petition.

2. SAME—*who are properly counted as signers of a drainage petition.* A life tenant and his adult children, representing four-sixths of the remainder combined with the life estate, are properly counted as signers of a petition to organize a drainage district under the Levee act.

3. SAME—*right of commissioners to leave out lands benefited by district.* In a proceeding to organize a drainage district under the Levee act, if the proposed district does not include all the land that will be benefited, the commissioners, under section 12 of the act, may alter the boundaries so as to include such portion of the new lands as will not have the effect of making the signers of the petition less than the number required by the statute, and may leave out the remainder of the new lands even though they will be benefited by the proposed work.

4. SAME—*commissioners under Levee act cannot assess benefits.* The provisions of the Levee act for assessing damages by the commissioners or by a jury being unconstitutional, the commis-

sioners have no power to make an assessment of benefits except where no part of the lands are taken and the owner makes no claim of damages in excess of benefits, since the question of compensation for land taken and damages to land not taken, which must be submitted to a jury in a proceeding under the Eminent Domain act, involves the consideration of special benefits.

APPEAL from the County Court of McLean county; the Hon. ROLLAND A. RUSSELL, Judge, presiding.

RAYBURN & BUCK, for appellant:

The grantee in a warranty deed conveying lands in fee simple, which deed is held in escrow until the day of payment of the consideration of the transfer arrives, is the owner of the lands conveyed, in the contemplation of the Levee Drainage act. *Gudgel* v. *Kitterman,* 108 Ill. 50; *Redden* v. *Miller,* 95 id. 336; *Leiter* v. *Pike,* 127 id. 287; *Thoraldsen* v. *Hach,* 87 Minn. 168.

The petition to organize the drainage district should have been dismissed for the reason the petition was not signed by the required number of competent land owners. The record in this case does not affirmatively show that the court had jurisdiction to organize the district. 2 Starr & Cur. Stat. par. 30, p. 1501; *Payson* v. *People,* 175 Ill. 267; *Merritt* v. *Kewanee,* 175 id. 537.

The statute in pursuance of which the court appointed the commissioners of the alleged drainage district, in lieu of a jury, to make assessments of benefits or damages and benefits is unconstitutional and void, and the order of the court was without authority of law. Const. 1870, art. 2, sec. 13; art. 11, sec. 14; *Railroad Co.* v. *Drainage District,* 194 Ill. 310; *Juvinall* v. *Drainage District,* 204 id. 106; *Railroad Co.* v. *Drainage District,* 215 id. 501.

The commissioners had no authority, acting in lieu of a jury, to spread the assessments appearing in said report. The section of the statute under which they attempted to act in that respect is unconstitutional. 2 Starr & Cur. Stat. sec. 37,

p. 1519; *Railroad Co.* v. *Drainage District,* 215 Ill. 501; *Mack* v. *Drainage District,* 216 id. 56.

The commissioners had no power to enlarge the proposed district so as to include a part, only, of the lands they found and reported to the court would be benefited by the proposed improvement. 2 Starr & Cur. Stat. sec. 9, par. 6, and sec. 12, p. 1505.

The appellant was entitled to have the assessment of benefits, or damages and benefits, determined by a legally constituted jury. *Railroad Co.* v. *Drainage District,* 215 Ill. 501.

The assessment of benefits to appellant's lands by the commissioners, sitting as a jury, without considering the question of damages to appellant's lands not taken, was without authority of law. 2 Starr & Cur. Stat. par. 68, p. 1519, and par. 45, p. 1509; *Pinkstaff* v. *Drainage District,* 213 Ill. 186.

WIGHT & ALEXANDER, for appellee:

For the purpose of the organization of the district the life tenant in possession and paying taxes is an "owner" of land. *People* v. *Barnes,* 193 Ill. 620.

Marks Banks was the owner of the fee to the land described as his in the petition, at the time he signed the petition and at the time of the hearing thereon, and his name was properly counted in determining the majority of adult owners. *Railroad Co.* v. *Hull,* 1 Ill. App. 612; *Furness* v. *Williams,* 11 Ill. 230; *Price* v. *Railroad Co.* 34 id. 13; *Demesmey* v. *Gravelin,* 56 id. 93; *Land Co.* v. *Peck,* 112 id. 408; *Eichlor* v. *Holroyd,* 15 Ill. App. 657.

The commissioners may enlarge the boundaries of the district proposed by the petitioners so as to embrace any lands that will be benefited, provided they do not so far enlarge the district as to destroy the petitioner's majority of adult land owners therein situated or the requisite area. Levee act, sec. 12.

The commissioners are required by the statute to find whether or not the district proposed by the petitioners embraces all of the lands that will be benefited, and if not, to report what additional lands will be benefited.   Levee act, sec. 9, 5th clause.

The commissioners had full power and authority to make assessments of benefits.   It is only the method prescribed by the Levee act for fixing compensation for the lands that are to be taken and damage to the lands not to be taken that is in violation of the constitution of this State.   *Briggs* v. *Drainage District,* 140 Ill. 53; *Railroad Co.* v. *Drainage District,* 194 id. 310; *Juvinall* v. *Drainage District,* 204 id. 106; *Railroad Co.* v. *Drainage District,* 213 id. 83; *Railroad Co.* v. *Drainage District,* 215 id. 501; Const. 1870, art. 2, sec. 13; *People* v. *McRoberts,* 62 id. 38.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an appeal from orders of the county court of McLean county organizing the Sangamon River Drainage District, in said county, and confirming an assessment of benefits against appellant's lands by the commissioners of said district.   The proceeding was commenced by filing a petition for the organization of the district under what is commonly known as the Levee act.   (2 Starr & Cur. Stat. 1500.)   Commissioners were appointed by the court, and they examined the lands proposed to be drained and over and upon which the work was proposed to be constructed, and made a report, as required by section 9 of the act, recommending the organization of the district.   Appellant filed objections to the report and his objections were overruled.

It is first contended that the court erred in overruling the objections and in not dismissing the petition, for the reason that it was not signed by a majority of the adult owners of the land within the district and who represented one-third in area of the lands to be reclaimed or benefited.   The petition

was signed in the summer of 1903 and the hearing was in the fall of that year, and Marks Banks, one of the signers, was counted by the court as the owner of one hundred and sixty acres of land.    He had previously signed and acknowledged a deed of the land to Harrison Frink and Sheridan J. Frink, and had deposited the deed in the First National Bank of Bloomington, to be delivered on payment of the purchase price on or before February 15, 1904, and in case of such payment he was to deliver possession on or before March 1, 1904.    The deed placed in escrow conveyed nothing until the conditions for its delivery were performed on February 15, 1904, when it was delivered to the grantees.    (*Leiter* v. *Pike,* 127 Ill. 287.)    The title did not pass out of Marks Banks until the deed took effect and the grantees became the owner of the land, and he was properly counted as an owner.

There was an eighty-acre tract which had belonged to James R. Cundiff, who had died leaving a widow, Sarah Cundiff, and an only son, Isaac.    By his will James R. Cundiff devised said land to his widow for life, and she died before the petition was signed.    After her death the land was devised to the son, Isaac Cundiff, for life, with remainder in fee at his death to his children who should be living at that time, and if any child of Iasac should die in his lifetime leaving a child or children, such child or children who might be living at the time of Isaac's death was to have the share that would have gone to the parent.    Isaac Cundiff had six children, of whom four were adults and two were minors.    He and the adult children signed the petition.    We do not care to construe the will in this collateral way, since, in any view of its provisions, the petition was sufficient. Isaac Cundiff, who signed the petition, had a life estate in the land and was also the only heir-at-law of the testator, and if his children had no present estate, the fee after the life estate was in him as heir-at-law to await the contingency upon which the remainder was to vest; and if the children had a present estate, the adults who signed the petition rep-

resented four-sixths of the remainder combined with the life estate. The petition fulfilled the requirements of the statute.

The commissioners reported that the proposed district did not embrace all the lands that would be benefited, and that a very large area of additional lands, of which they gave the descriptions and names of the owners, would be benefited. They enlarged the district so as to include part of the lands, which would not have the effect of so far enlarging the district that the petitioners would no longer constitute a majority of the adult land owners nor represent less than one-third of its area, but they did not include 4248 acres which would be benefited by the proposed work, for the reason that there would not be the requisite number of petitioners. Appellant contends that the petitioners had no power to enlarge the district by including a part, only, of the lands that would be benefited, and that the court had no right to organize a district including less than all the lands that would be so benefited. Section 12 of the act authorizes the commissioners to alter the boundaries by extending or contracting them so as to include lands that will be benefited and exclude lands that will not be benefited, provided that the alteration of the boundaries shall not have the effect of so far enlarging or contracting the district that the petitioners will not any longer constitute a majority of the adult land owners of the land therein situated or represent one-third of the area. The change in the boundary of this district was in accordance with that statute. The proviso to section 12 fixed a limit beyond which the commissioners could not go in enlarging the district, and the court did not err in overruling the objection.

Appellant owned two hundred acres of land in the district and the proposed ditch was to run across his land, so that a part would be actually taken for the ditch. The court directed the commissioners to go upon the lands of the district and make assessments of benefits and damages, or benefits, in the manner provided by law and to make a report to the court. The commissioners took an oath that they would,

to the best of their ability, make assessments of damages and benefits, or benefits, as the case might be, and made a report, accompanied by an assessment roll, in which they assessed against a forty-acre tract of appellant $83.40 and against a tract of one hundred and sixty acres $551.12 for benefits. The commissioners reported that they had disregarded all damages that would be sustained by the lands, both damages to land that would be taken and damages to land that would not be taken, because they had been advised that they had no right, power or authority, under the law, to fix damages or award compensation, but that it was their intention, after the assessment of benefits had been confirmed, to begin proceedings under the Eminent Domain act to condemn the right of way over the lands of owners with whom they could not agree. Appellant objected to the assessment, specifying as the principal ground that the commissioners had no power or authority to make the assessment, but his objections were overruled. The commissioners then sat as a jury by direction of the court, against the objection of the appellant, for the hearing of objections, and rendered a verdict confirming their assessment as made, without modification, amendment or correction.

It is conceded that the commissioners had no power to assess damages, and they so stated in their report; but it is contended that they could assess benefits to appellant's lands and try the question of compensation and damages before a jury,—or, in other words, that they could try the part of a condemnation case involving benefits and have a jury try the other part involving damages, and have two verdicts. The provisions of this Drainage act for assessing damages by a jury or commissioners are unconstitutional and void. (*Michigan Central Railroad Co.* v. *Spring Creek Drainage District,* 215 Ill. 501.) The compensation to be paid for land actually taken and damages to lands not taken can only be determined by a jury. When a jury is empaneled for that purpose, after ascertaining the just compensation for land

taken they can only determine whether there is any damage to the lands not taken, or how much the damage is, by taking into account special benefits to the land. On the question of damages to lands not taken the jury would be bound to consider the effect of the improvement upon the land, both advantages and disadvantages, and for the purpose of reducing or balancing damages would necessarily take into account any special benefits. That is not assessing benefits to the land, but is merely ascertaining whether there is damage or not. (*Page* v. *Chicago, Milwaukee and St. Paul Railway Co.* 70 Ill. 324.) Where commissioners set down damages and benefits and carry the balance forward as damages or benefits, the only final conclusion is that there are damages or are benefits, and the figures only show how the result was arrived at. Manifestly, the commissioners cannot supplant a jury in the determination of one of the questions which is necessarily involved in a proceeding under the Eminent Domain act. If commissioners can make an assessment of benefits to lands a part of which is taken for a public improvement, they can finally and conclusively determine a question which the owner has a constitutional right to have submitted to a jury. As to lands no part of which is taken, if the owner makes no claim of damages in excess of benefits the commissioners may assess such benefits, and if a jury in an eminent domain proceeding has found that there were no damages to the remainder of the land, the verdict would not be conclusive that there were no benefits. (*City of Chicago* v. *Mecartney,* 216 Ill. 377.) In this case the commissioners, under the orders of the court and against the objection of appellant, attempted to determine a question which appellant had a right to have submitted to a jury. The court erred in overruling the objections of appellant to such proceeding.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*