No. 45,440

Leo Zeigler, *Appellant,* v. Bethena S. Conger, *Appellee.*

(460 P. 2d 515)

Opinion filed November 8, 1969.

*Robert Osborn,* of Stockton, argued the cause and was on the briefs for the appellant.

*D. A. Hindman,* of Stockton, argued the cause, and *Stanley Krysl,* of Stockton, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Kaul, J.: Plaintiff-appellant brings this action for specific performance of a contract for the sale of eighty acres of land. Defendant-appellee, a seventy-eight year old widow, and plaintiff reached an oral agreement, which was reduced to writing on a printed form by a local banker at the request of both parties. Defendant executed the contract for herself and for the heirs of W. T. Conger, deceased.

The issue on appeal is whether defendant is absolved from liability for specific performance of the contract by reason of an "absolving clause," the blanks of which were not fully filled out by the scrivener.

The eighty acre tract, involved in the contract, was a part of the estate of defendant's deceased husband. At the time of the contract,

in February of 1967, defendant, Bethena S. Conger, owned an undivided one-half interest in the land, the other undivided one-half interest was owned by her three children, namely; Ardna L. Smith, Grant V. Conger and W. Duane Conger.

A day or two following the signing of the contract, plaintiff and defendant went to the office of Hindman and Krysl, attorneys in Stockton, who had performed services for both parties. They contacted Mr. Krysl and requested that he prepare a proper deed. Mr. Krysl informed plaintiff and defendant that the contract would not be binding and a deed would not convey title to the property unless executed by all of the Conger heirs and their spouses. Nevertheless, a deed was prepared but was not signed by defendant nor any of the Conger children or their spouses.

Plaintiff undertook to obtain the consent of the Conger children to the sale and contacted them personally, but was unsuccessful in obtaining their consent.

Defendant refused to execute a deed to her undivided one-half interest and tendered back to plaintiff the $1,000 paid to her by him. Plaintiff declined to accept the tender by defendant, but on June 20, 1967, defendant delivered a check to plaintiff by restricted mail. Plaintiff retained the check but did not cash it.

Thereafter, plaintiff filed this action asking that defendant be required to specifically perform her part of the agreement individually and to convey any interest of her cotenant owners, which she had the right to convey as agent, and that the purchase price be adjusted by the amount of interest defendant owns and controls, if defendant were unable to convey the entire interest in the land.

Following a pretrial conference, the case was tried to the court. Specific performance was denied.

The trial court found defendant did not have authority at any time to execute written instruments or conveyances of real estate for her children or their spouses. The court noted:

". . . The sale was effected by oral conversation which became merged into a banker's typical contract. Defendant owned only one-half interest in the land. The contract contained an 'absolving clause' so defendant refused to deed any interest in the land. Hence, this law suit."

After making detailed findings of fact concerning the transaction involved, the trial court concluded:

"The 'absolving clause' in the contract relieves the defendant from liability under the contract when both parties know defendant is not the holder of a full merchantable title."

We construe the trial court's determination to be that the "absolving clause" was intended to be included in the contract and was in fact and law a part thereof.

The trial court held the only obligation of the defendant was to return the $1,000 down payment to the plaintiff with interest thereon at six percent from the date of the contract.

Thereafter, plaintiff perfected this appeal and defendant cross-appealed from the trial court's judgment directing the payment of interest on the down payment.

On appeal both parties take the position that only a question of law is presented and, therefore, none of the evidence is included in the record. The facts, which we have related and will note in the course of our discussion, are gleaned from the findings of the trial court.

The contract in question was prepared on what appears to be an ordinary form for real estate contracts with the usual blanks to be filled out.

The portion of the contract with which we are interested consists of a sentence pertaining to the sellers' obligation to cure a defective title if possible and if not to be absolved from the contract. It reads:

". . . If the title be found to be defective, the seller agree to have the defects in it rectified within a reasonable time, which is not to exceed _____days from the date of notice of such defects; but in case such defects in the title cannot be cured or remedied within that period, and no extension of time is had between the parties, this Contract to be null and void, and the sum of _____ Dollars deposited as aforesaid, is to be returned to the buyer _____."

The portion above quoted is followed by the last paragraph of the body of the contract which provides for forfeiture of the down payment on default of the buyer. It reads:

"If, though the title be good and the seller s here ha ve kept their part of this Contract, the buyer _____ fail to comply with its requirements on his part, within reasonable time # # # after being furnished with the abstract of title, or within reasonable time # # # from the date of this Contract, provided said abstract has been delivered within ten days as agreed, then the aforesaid deposit of _____ Dollars shall be forfeited to the seller _____, but for this cause this Contract shall not cease to be operative as between the parties thereto."

Plaintiff argues that since the scrivener-banker failed to fill out the blanks, the absolving clause is not a part of the contract and should be disregarded. Plaintiff contends that all other blanks in

the printed form, which pertained to the oral agreement of the parties, were filled out and thus it should be inferred the absolving clause was not a part of the agreement.

While it appears, as plaintiff contends, that many of the blanks in the printed form were filled out, we are unable to draw the inference urged by plaintiff.

In the first section of the contract, in which the parties were identified and the terms of the sale stated, the word seller was pluralized by inserting "s" in the blank provided. However, in the next section, which provides for the sellers' obligation to furnish a complete abstract of title, the word seller appears three times; it is pluralized in only one instance. Certainly, the parties intended that the sellers be obligated in this regard.

The absolving clause is only one provision of the sentence under consideration. The first provision obligates the seller to rectify a defective title within a reasonable time if possible. It is not suggested that defendant was not obligated under this provision merely because the letter "s" was not inserted after seller and reasonable time specified as not to exceed a fixed number of days in the blank provided therefor. If the absolving clause is to be disregarded for the reasons advanced by plaintiff, then the entire sentence must fall including the provision for the sellers' obligation to rectify a defective title within a reasonable time if possible.

The only unfilled blank in the absolving clause itself is that provided for the amount of the down payment following the words "sum of." We note the scrivener also failed to type in the amount of the down payment in the following paragraph providing for the forfeiture of the down payment on default of the buyer. In both instances the sum is referred to as an aforesaid deposit of dollars, referring back to a prior clause of the contract in which a down payment of $1,000 is specified and acknowledged.

We believe what has been said demonstrates that omissions by the scrivener resulted from inadvertence rather than design.

We are well aware that, if the unfilled blanks or omissions in a contract make it unintelligible or cause the intention of the parties to be unascertainable, a court cannot write a contract for the parties by supplying the omissions. In this case, however, notwithstanding the omissions which we believe to be insignificant, the meaning of the provisions referred to is clear and the intention that they be a part of the contract, in the absence of evidence to the contrary, appears to be obvious.

Plaintiff directs our attention to a statement in 17 Am. Jur. 2d, Contracts, § 280, p. 693:

"Unfilled blanks in a contract may be rejected as surplusage if the parties so intended." (p. 694.)

Apparently, plaintiff construes the statement to mean that in the case of unfilled blanks an entire provision or paragraph of a contract may be rejected. If this is plaintiff's construction it is in error. A footnote to the statement quoted cites cases (*N. E. D. Holding Co. v. McKinley*, 246 N. Y. 40, 157 N. E. 923; *Starr v. Holck*, 318 Mich. 452, 28 N. W. 2d 289; 172 A. L. R. 413) which hold that where a blank in an instrument is not filled, such blank may be rejected as surplusage if the parties so intended; and in such case the intent is to be inferred from the transaction and its details. In other words, it is the unfilled blanks rather than the entire clause or provision which may be rejected. (See, also, 17 C. J. S., Contracts, § 65, p. 742.)

In the instant case, the filling in of the letter "s" after the word seller and the failure to specify an exact number of days as a reasonable time were not essential to the completion of the contract and the sum called for in the other two blanks, is supplied from another part of the instrument. By its inclusion with other integral and necessary provisions of the contract, and from the details of the transaction as found by the trial court, we believe the inference is properly drawn that the parties intended the absolving clause to be a binding provision.

Absolving clauses, such as that before us, are common in many types of contracts. (See 17 Am. Jur. 2d § 409, p. 857, and 32 A. L. R., Anno. pp. 584, 606 and 607.) However, our attention is called to only two cases in which similar clauses have been considered by this court.

In *Barker v. Critzer*, 35 Kan. 459, 11 Pac. 382, a seller was absolved from liability for specific performance under the provision of a contract for the sale of real estate, similar to the absolving clause in the contract here. The contract provided for a down payment of $50, which was to be forfeited if the buyer failed to perform within thirty days and if the seller failed to tender a deed within the same time the contract was at an end, without any forfeiture and the down payment was to be returned to the buyer. The seller did not tender a deed and suit for specific performance was filed. On appeal, this court held the remedy of plaintiff (successor to the buyer) was not in specific performance but to sue for

the $50 if the seller refused to return it. While the court described the contract as optional in nature as to the seller (Critzer), the instrument was treated as a contract rather than an option.

Plaintiff contends defendant is estopped from defending on the ground of lack of title and relies on *Herman v. Sawyer*, 112 Kan. 6, 209 Pac. 663, to support his position.

*Herman* is the only other Kansas case involving an absolving clause that is called to our attention.

In *Herman* a judgment of the district court, denying specific performance to the buyer (Herman), was reversed by this court. Prior to his contract with Herman, Sawyer had contracted for the sale of the same land with one Fry, a resident of Missouri. Herman knew of the Fry contract, but Sawyer claimed that the Fry contract was procured by fraud and could be avoided. Shortly after executing the contract with Herman, Sawyer commenced suit to quiet title against the Fry contract, Fry removed the quiet title suit to federal court and also filed a separate action for damages for breach of contract against Sawyer in federal court. Because of the Fry litigation, Sawyer claimed he could not deliver merchantable title to Herman and should be absolved under the terms of the contract.

Probably because of the outstanding Fry contract, the following clause was inserted in the Sawyer-Herman contract:

" 'It is agreed between the parties hereto that in case said Sawyer is *wholly unable* to furnish perfect title to said land, the attached check is to be returned to said Herman and this agreement canceled, and neither party to be liable for damages in any way.' " (*Herman v. Sawyer*, supra. p. 7) (Emphasis supplied.)

In holding Sawyer not absolved under the clause and existing circumstances the court said:

"The provision of the contract governing conduct of the parties if the defendant should be 'wholly unable' to perform, related specifically to the outstanding Fry contract, and contemplated, not merely diligence without success, but impossibility. While the defendant, led by his counsel, testified he had done everything he could to get the suit to quiet title disposed of, the patent fact was to the contrary. All he needed to do was to exhibit, on the equity side of the federal court, the pleading filed by Fry on the law side, and a decree would have been entered whenever applied for." (p. 8.)

The import of the *Herman* decision is that under the language of the clause only impossibility was absolved and not merely diligence without success. The court found that Sawyer could have easily disposed of the Fry litigation and perfected his title if he had so desired.

Facts, such as related by the court in the *Herman* decision, are not before us in the instant case. It is not claimed or even suggested that Mrs. Conger by further diligence might have been able to secure conveyances from her co-owners.

Plaintiff devotes much of his brief in advancing the proposition that where a vendor signs a contract to convey, but does not have a complete title, equitable principles compel specific performance as to whatever interest the vendor has coupled with a proper abatement from the purchase price. Defendant concedes, and we agree, that as an abstract principle of law plaintiff's proposition is correctly stated. (See *Hollingsworth v. Sell*, 167 Kan. 405, 207 P. 2d 406.) However, it is not applicable to a contract qualified by an absolving clause, as found in the present case.

We next turn our attention to the defendant's cross-appeal, directed at the trial court's allowance of interest from the date of contract to date of judgment. Ordinarily interest stops on the making of a proper tender. However, when specific performance is denied, a court is allowed considerable latitude in making such orders as it sees fit in order to administer equity between the parties. (*Haston v. Citizens State Bank*, 132 Kan. 767, 297 Pac. 1061.)

In the instant case the court heard all of the evidence and found that plaintiff had always acted in good faith even though specific performance was denied. Under the circumstances, we believe the allowance of interest to plaintiff was within the equitable discretion of the trial court and, therefore, its ruling will not be disturbed.

The judgment is affirmed as to the appeal and cross-appeal.